[Cite as *State v. Allen*, 2013-Ohio-3715.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| JAMES ALLEN | : | Case No. 2012CA00196 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:        Appeal from the Court of Common
Pleas, Case No. 2012CR963

JUDGMENT:        Affirmed

DATE OF JUDGMENT:        August 26, 2013

APPEARANCES:

For Plaintiff-Appellee

JOHN D. FERRERO
Prosecuting Attorney

By: KATHLEEN O. TATARSKY
110 Central Plaza South
Suite 510
Canton, OH 44702-1413

For Defendant-Appellant

JACOB T. WILL
116 Cleveland Avenue, NW
Suite 808
Canton, OH 44702

*Farmer, P.J.*

{¶1} On August 6, 2012, the Stark County Grand Jury indicted appellant, James Allen, on one count of vehicular assault in violation of R.C. 2903.08 and one count of endangering children in violation of R.C. 2919.22. Said charges arose from an incident wherein appellant drove his vehicle off the roadway, striking a house. His passengers therein, his wife and two children, sustained injuries.

{¶2} A jury trial commenced on September 11, 2012. The jury found appellant guilty as charged. By judgment entry filed September 24, 2012, the trial court sentenced appellant to an aggregate term of five years in prison.

{¶3} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶4} "THE TRIAL COURT ERRED IN PERMITTING THE PROSECUTOR TO USE PRIOR HEARSAY STATEMENTS TO IMPEACH A WITNESS PURSUANT TO EVID. R. 613."

II

{¶5} "THE DEFENDANT'S CONVICTIONS FOR ONE COUNT OF VEHICULAR ASSAULT IN VIOLATION OF R.C. 2903.08 AND ONE COUNT OF ENDANGERING CHILDREN IN VIOLATION OF R.C. 2919.22 WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I

{¶6} Appellant claims the trial court erred in permitting the state to use prior hearsay statements to impeach a witness pursuant to Evid.R. 613. We disagree.

{¶7}  Evid.R. 613 provides the following in pertinent part:

**(B) Extrinsic evidence of prior inconsistent statement of witness.** Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:

(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;

(2) The subject matter of the statement is one of the following:

(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;

(b) A fact that may be shown by extrinsic evidence under Evid.R. 608(A), 609, 616(A), or 616(B);

(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.

{¶8}  Evid.R. 801(C) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

{¶9}  The court called to the stand Anna Allen, appellant's wife, pursuant to Evid.R. 614(A) which states: "The court may, on its own motion or at the suggestion of a

party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." Ms. Allen testified to the events leading up to the accident, the accident itself, and what occurred at the hospital thereafter. She testified the cause of the accident was appellant hitting a bump in the road (T. at 125):

> A. Um-m, we hit a bump, I had a pop in my hand, the pop went in the air. It startled me because the back end started to slide almost immediately after hitting the bump underneath us. So the pop went up in the air, into his face.
>
> When I looked up, we were going to head towards a vehicle. My husband pulled the wheel this way to avoid hitting the car that was this way. And then after that, um-m, we just started to - - we continued to spiral out of control. I remember looking over at him and he was trying to get control of the wheel.

{¶10} Because of inconsistencies between her trial testimony, her grand jury testimony, and prior statements made to hospital staff and police, the state asked Ms. Allen about her prior inconsistent statements. Ms. Allen testified she could not recall her statements made at the hospital. T. at 131-132. Thereafter, the following exchange occurred (T. at 137-138):

Q. Ms. Allen, isn't it true, while in the hospital you told the officers that James stated he was going to take us all out and he swerved twice and that he slammed into the house and the car?

A. Not to my knowledge. I have been told by my daughter, by the officer, by Victims Assistance, and a number of other people what I said, but I don't have any recollection of saying those things being that I had been up for days and I was under the influence.

THE COURT REPORTER: I'm sorry?

THE WITNESS: I had been up for days and I was under the influence. I had been up for three days, I was under the influence. Um-m, I was panicking, I don't know what I said at the time. I've been told by other people these are the things that I said so I'm not denying them, I'm just telling you that's not what happened and that's not what I can remember saying.

{¶11} As our brethren from the Second District set forth in *State v. Reed,* 2nd Dist. Montgomery No. 19674, 2003-Ohio-6536, ¶ 30:

"If the witness admits making the conflicting statement, then there is no need for extrinsic evidence. If the witness denies making the statement, extrinsic evidence may be admitted, provided the opposing party has an opportunity to query the witness about the inconsistency, and provided the 'evidence does not relate to a collateral matter[.]***'

However, if the witness says he cannot remember the prior statement, 'a lack of recollection is treated the same as a denial, and use of extrinsic impeachment evidence is then permitted.' " (Citations omitted.) *State v. Harris* (Dec. 21, 1994), Montgomery App. No. 14343, 1994 WL 718227; see, also, *State v. Taylor* (July 26, 1996), Montgomery App. No. 15119, 1996 WL 417098 ("A prior statement of a witness may be proved by extrinsic evidence if the witness denies the statement or claims he cannot remember the statement").

{¶12} Based upon Ms. Allen's testimony at trial, an issue existed as to her credibility. She was afforded the opportunity to explain or deny her statements, and defense counsel was afforded the opportunity to interrogate her on her statements. We find Evid.R. 613(B)(1) was satisfied.

{¶13} Following Ms. Allen's testimony, the state called to the stand Debra Stewart, the Emergency Room trauma nurse who treated Ms. Allen. Ms. Stewart testified while obtaining Ms. Allen's medical history for purposes of diagnosis and treatment, Ms. Allen made certain statements to her. T. at 158. Ms. Allen was upset and crying, but alert and oriented. T. at 159-161. Ms. Stewart testified to the following exchange with Ms. Allen (T. at 162-163):

A. She kept repeating, He hates me, he hates me. And in trying to get her children - - get her to calm down for her children's sake, I asked her, you know, what do you mean, you know, because I was trying to find

out - - we have to question them as far as, like, how did the accident happen, what did you hit, the mechanism of injury because that can change the whole outlook on what tests you do and stuff, whether they were belted, whether they hit another object or another car. And she just kept saying, He hates me, he hates me. I asked her what she means by that, and she said her husband hates her, that they were fighting and he said he was going to kill them all, he just turned the wheel and lost control of the car.

Q. When she provided that information to you, were you concerned at that point?

A. Yes.

Q. And why?

A. Well, because that's a whole 'nother can of worms. And I didn't want to get too involved in it. I just went out and the Jackson Police officer, I believe he was in the other room with the person who was driving the car, and when he came out I just said, I got to tell you what this patient said to me. So I explained it to him, and then he went in and talked to the patient.

{¶14} Ms. Allen's testimony at trial was meant to exonerate her husband from the injuries caused by the accident. We find the impeachment also qualified under Evid.R. 613(B)(2)(b). In addition, Evid.R. 616(A) provides for the use of the bias method of impeachment: "Bias, prejudice, interest, or any motive to misrepresent may

be shown to impeach the witness either by examination of the witness or by extrinsic evidence."

{¶15} Apart from the use of the impeachment tool, Ms. Allen's statements to Ms. Stewart also qualified under the hearsay exceptions of Evid.R. 803(3) (then existing, mental, emotional, or physical condition) and (4) (statements for purposes of medical diagnosis or treatment).

{¶16} Assignment of Error I is denied.

II

{¶17} Appellant claims his convictions were against the sufficiency and manifest weight of the evidence. We disagree.

{¶18} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks,* 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin,* 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins,* 78 Ohio St.3d 380, 1997–Ohio–52. The granting of a new

trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

{¶19} Appellant was convicted of vehicular assault in violation of R.C. 2903.08(A)(2)(b) which states: "No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in any of the following ways:***Recklessly."

{¶20} Appellant was also convicted of endangering children in violation of R.C. 2919.22(A) which states the following in pertinent part:

> No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

{¶21} As set forth in R.C. 2901.22(C):

> A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless

indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist.

{¶22} It is appellant's position that the injuries were the result of a pothole and/or animal in the road, not recklessness.

{¶23} While at the hospital, Jackson Township Police Officer Thomas Minarcheck took Ms. Allen's statement wherein she stated, "he stated he was going to take us all out, and he swerved twice, and then he slammed into the house and the car." T. at 256-266. A witness to the accident, Terre Arnold, testified to the following (T. at 193-195):

A. I was coming back and - - to my daughter's house, and I witnessed a car that was coming towards me, and he - - well, the car jerked like towards the shoulder and then straightened out and then went across the double yellow line, went back into its lane, came back acrossed and tipped up a little bit.

I pulled over into - - there's a church parking lot, or a driveway acrossed from my daughter's home, and I pulled in that to get out of the way because I didn't know if he was going to roll or hit me or what he was going to do, the car. So I just stayed there.

And them, um-m, the vehicle shot acrossed my daughter's driveway.***

***

So I went over, and as the car crossed the driveway and slammed into the house, it slid down the house into her car. And there was big bushes there, about six feet tall, and the force took all the bushes out so they were smashed between the vehicle that hit the house and my daughter's car.

{¶24} Ms. Allen, who was trapped inside the car, told Ms. Arnold "he did it on purpose, he did it on purpose." T. at 198. Ms. Arnold testified she travels the road a lot and there were no bumps or anything in the road. T. at 200.

{¶25} Jackson Township Police Officer Josh Escola wrote out the accident report and took measurements at the scene. T. at 219. Officer Escola spoke to appellant who told him "something ran in from of him, his car." T. at 220. Officer Escola testified there were no skid marks on the road to indicate braking, but "yaw marks." T. at 223, 225. He explained what yaw marks were and testified the yaw marks indicated appellant cut the wheel "all the way to the right." T. at 224-225. The car never spun out, indicating the brakes were not applied. T. at 226. From the first time the car went off the road, it traveled 545 feet and 5 inches to its final resting place at the house. T. at 228. Officer Escola explained the car left the roadway at three different points (T. at 245):

A. Yes, ma'am. Two times on the north, one time was the initial movement off the road, which was the Q and R mark. R was the initial movement off the road, crossed two lanes of travel on the left side of the

vehicle, went off the road, both tires, the right tires did not go off the road, and then crossing the lanes of travel. And on I and J, these two marks, the vehicle went off the road for the final time.

{¶26} Even after a thorough investigation of the area, there was no indication that the brakes had been applied to the car. T. at 240.

{¶27} We find Ms. Allen's statements were corroborated by the accident investigation report and the eyewitness testimony.

{¶28} Upon review, we find sufficient evidence to establish recklessness, and no manifest miscarriage of justice.

{¶29} Assignment of Error II is denied.

{¶30} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Farmer, P.J.

Wise, J. and

Baldwin, J. concur.


_____

Hon. Sheila G. Farmer


_____

Hon. John W. Wise


_____

Hon. Craig R. Baldwin


SGF/sg 805

[Cite as *State v. Allen*, 2013-Ohio-3715.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JAMES ALLEN | : | |
| | : | |
| Defendant-Appellant | : | CASE NO. 2012CA00196 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio is affirmed. Costs to appellant.

_____
Hon. Sheila G. Farmer

_____
Hon. John W. Wise

_____
Hon. Craig R. Baldwin