[Cite as *State v. Arnold*, 2014-Ohio-1134.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,               CASE NO. 13-13-27

    v.

JEFFREY C. ARNOLD,                   O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Fostoria Municipal Court
Trial Court No. CRB1300116

Judgment Affirmed

Date of Decision: March 24, 2014

APPEARANCES:

    *Gene P. Murray* for Appellant

    *Timothy J. Hoover* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant Jeffery C. Arnold ("Arnold") appeals the June 18, 2013, judgment of the Fostoria Municipal Court sentencing Arnold to 150 days in jail following Arnold's bench trial conviction for Domestic Violence in violation of R.C. 2919.25(A), a first degree misdemeanor.

{¶2} The facts relevant to this appeal are as follows. On March 28, 2013, a complaint was filed against Arnold alleging that Arnold committed Domestic Violence in violation of R.C. 2919.25(A), a first degree misdemeanor. (Doc. 1). The complaint alleged that Arnold did cause, or attempt to cause, physical harm to his father, Lester Arnold. (*Id.*) The complaint further alleged that Arnold, who lived with his father and mother, became agitated and grabbed his father by the hair "and then strangled him." (*Id.*)

{¶3} On April 1, 2013, Arnold entered a plea of not guilty to the charge against him. (Doc. 7).

{¶4} On June 18, 2013, the case proceeded to a bench trial. At the trial, the State called four witnesses: Lester Arnold, the victim, Connie Arnold, the victim's wife and mother to Arnold, and two officers that responded to the scene. The State then rested its case. Arnold's counsel cross-examined all of the witnesses, but Arnold did not present any further evidence. Following closing

arguments, the court found Arnold guilty of Domestic Violence in violation of R.C. 2919.25(A), a first degree misdemeanor.

{¶5} The trial court then proceeded directly to sentencing, and sentenced Arnold to 150 days in jail. (Doc. 28). A judgment entry reflecting this was filed that same day, June 18, 2013. (*Id.*)

{¶6} It is from this judgment that Arnold appeals, asserting the following assignments of error for our review.

**ASSIGNMENT OF ERROR 1**
**THE TRIAL COURT ABUSED ITS DISCRETION AND THE PROSECUTING ATTORNEY WRONGLY AND IMPROPERLY ADVISED THE STATE'S OWN KEY WITNESS THAT HE (LESTER ARNOLD, THE ALLEGED VICTIM) HAD NO RIGHT TO INVOKE HIS PRIVILEGE UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION, TO NOT TESTIFY, REGARDING LESTER ARNOLD'S EXPRESSED UNDER OATH STATEMENT THAT "I HAVE A RIGHT FROM SELF-INCRIMINATION UNDER THE FIFTH AMENDMENT AND I DO HAVE A RIGHT TO REFUSE TO TESTIFY," WITH THE TRIAL COURT EFFECTUALLY AND REPEATEDLY DENYING SAME, AND OTHERWISE ADVISING THE WITNESS OF CONTEMPT OF COURT, THEREBY RESULTING IN REVERSIBLE ERROR.**

**ASSIGNMENT OF ERROR 2**
**DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, BY THE TRIAL COURT'S REPEATED PATTERN OF DEMONSTRATING THAT IT HAD PREJUDICIALLY PRESUMED THE DEFENDANT-APPELLANT'S GUILT THROUGHOUT THE COURSE OF THE TRIAL, THEREBY RESULTING IN REVERSIBLE ERROR.**

**ASSIGNMENT OF ERROR 3**
**THE VERDICT OF THE TRIAL COURT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THEREBY RESULTING IN REVERSIBLE ERROR.**

**ASSIGNMENT OF ERROR 4**
**THE TRIAL COURT REVERSIBLY ERRED BY ALLOWING STATE'S WITNESS LESTER ARNOLD TO READ FROM HIS WRITTEN STATEMENT TO THE POLICE, OVER DEFENSE OBJECTION, INTO EVIDENCE AT TRIAL, THEREBY DENYING DEFENDANT-APPELLANT'S FUNDAMENTAL RIGHT TO CONFRONT WITNESSES UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, AS STATE'S WITNESS LESTER ARNOLD HAD ALREADY INVOKED HIS FIFTH AMENDMENT PRIVILEGE AND HAD TESTIFIED THAT HE DIDN'T REMEMBER WHAT HAD HAPPENED, AND THEREFORE COULDN'T BE CROSS-EXAMINED OR OTHERWISE CONFRONTED ABOUT HIS WRITTEN STATEMENT, STATE'S EXHIBIT A.**

{¶7} For the sake of clarity, we elect to address the assignments of error out of the order in which they were raised.

*Third Assignment of Error*

{¶8} In Arnold's third assignment of error, he contends that the trial court's finding of guilt was against the manifest weight of the evidence. Specifically, Arnold argues that there were no signs of any physical harm to Lester and that Lester testified that he did not remember what happened.

{¶9} In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the

conflicting testimony. *Id.* In doing so, this Court must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Andrews,* 3d Dist. No. 1–05–70, 2006-Ohio-3764, ¶ 30, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Thompkins*, 78 Ohio St.3d at 380, 387 (1997).

{¶10} In this case, Arnold was charged with Domestic Violence in violation of R.C. 2919.25(A), which reads, "No person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶11} At trial, both Lester and Connie testified that their son, Arnold, lived with them. Thus Arnold was a "household member" for purposes of R.C. 2919.25(A). (Tr. at 6, 22). This testimony was not contested. It was contested, however, whether Arnold caused or attempted to cause physical harm to his father, Lester.

{¶12} Testimony at trial revealed that on the evening of March 25, 2013, Arnold was having dinner with his parents, Lester and Connie. Arnold "wasn't especially happy" with what Connie made for dinner and he became agitated. (Tr. at 23-24). Arnold "became threatening" so Lester got up and walked into "the

computer room." (Tr. at 9). Arnold then followed Lester into the computer room, grabbed Lester by the hair and choked him. (*Id.*)

{¶13} Connie, who was not in the room at the time of the incident, heard a "commotion," consisting of "a crashing sound" and "a struggling sound." (Tr. at 24). At that point, Connie exited the residence along with her grandson. (*Id.* at 24-25). A neighbor happened to be outside, "so in the interest of safety [Connie] asked [the neighbor] to call the police." (Tr. at 25).

{¶14} Subsequently, the police arrived at the residence. The officers approached the residence and spoke briefly with Arnold from outside. The officers asked Arnold if they could see Lester to make sure he was "okay." (Tr. at 36). Arnold told the police that Arnold did not have to speak with them and then Arnold "slammed the door in [the officer's] face." (*Id.*)

{¶15} The officers repeatedly tried to make contact with Arnold inside the residence. As the officers considered whether they were going to have to make a forced entry into the residence, Lester came out of the garage. Officers later learned from a neighbor that around this time Arnold also walked out of another exit from the residence.

{¶16} Officer Brett Bethel of the Fostoria Police Department testified that Lester seemed to be "very scared, [and] agitated about the situation." (Tr. at 16). Officer Bethel testified that he did not see any injuries on Lester but he did notice

that Lester's hair was disheveled. (Tr. at 17). At that time Lester gave a statement to the police officers that Arnold had grabbed him by the hair and choked him. (*Id.*) At trial, Lester testified that he did not remember his son trying to hurt him.

{¶17} On appeal, Arnold argues that his conviction was against the manifest weight of the evidence as there was no evidence of physical harm to Lester. In addition, Arnold contends that since the victim in this case, Lester, testified that he did not remember whether Arnold caused or attempted to cause him physical harm, the State could not prove its case beyond a reasonable doubt.

{¶18} While it is true that there was no testimony indicative of physical harm to Lester beyond Lester's hair being "disheveled" and the choking, the statute at issue does not require physical harm. It merely requires that Arnold cause *or attempt to cause* physical harm to a family or household member. Evidence was introduced that Arnold became agitated, and that he followed Lester out of the kitchen when Lester tried to remove himself from the situation. Evidence was introduced that Arnold grabbed Lester by the hair and "choked" him. Evidence was also introduced that Lester had a "ruptured disc in [his] neck," which could have made him particularly vulnerable to injury. (Tr. at 9).

{¶19} At trial Arnold's counsel elicited testimony on cross-examination of Arnold's mother that Lester was easily agitated and "goes up like a rocket" in an attempt to establish that perhaps Lester was the aggressor. (Tr. at 31). However,

Connie testified that in this instance, when Lester left the room once Arnold became agitated, Lester was trying "to cut it off or to get away from what they were doing." (Tr. at 33). Thus while Lester may, in fact, have a temper, there is no indication that in this instance he started or escalated the argument.

{¶20} Based on the testimony that was presented at trial, we cannot find that under these circumstances the trial court "lost its way" or that there was a "manifest miscarriage of justice." Accordingly, Arnold's third assignment of error is overruled.

### First Assignment of Error

{¶21} In Arnold's first assignment of error Arnold contends that the prosecutor improperly advised State's witness Lester Arnold that Lester could not invoke his Fifth Amendment right against self-incrimination to refuse to testify. In addition, Arnold argues that it was improper for the trial court to admonish Lester Arnold with the statement that Lester may face contempt of court if Lester did not answer the questions of the prosecutor.

{¶22} "There is no absolute right to invoke the Fifth Amendment." *In re High Fructose Corn Syrup Antitrust Litigation*, 293 F.Supp.2d 854, 859 (C.D.Ill.2003) "'To be privileged by the Fifth Amendment to refuse to answer a question, the answer one would give if one did answer it (and answer it truthfully) must have some tendency to subject the person being asked the question to

criminal liability.'" *Id.* quoting *In re HFCS,* 295 F.3d at 663–64. The Fifth Amendment privilege is only properly invoked if the witness establishes an objectively reasonable belief that a responsive answer could expose that individual to criminal prosecution. *Id.*

{¶23} In this case, Arnold contends that the State and the trial court made improper comments to State's witness Lester Arnold while he was on the stand during the following portion of Lester's testimony.

> **Q: Mr. Arnold, were the police dispatched to your residence on March 25th of 2013?**
>
> **A: I don't remember the date.**
>
> **Q: Were they dispatched there in the spring of this year?**
>
> **A: Yes.**
>
> **Q: Do you recall why?**
>
> **A: Uhm, at this time, I'd like to plead the Fifth and I'm refusing to testify.**
>
> **Q: Okay. Do you understand that you don't have the right to refuse to testify?**
>
> **A: I have a right from self-incrimination under the Fifth Amendment and I do have a right to refuse to testify.**
>
> **THE COURT: You also understand you also may be held in contempt for failing to answer?**
>
> **THE WITNESS: Well, if that's the way that the rules work, yes.**
>
> **\* \* \***

**Q: Did you speak with an officer on that spring day when they came to your house?**

**A: I refuse to answer on the grounds that it may tend to incriminate me.**

**Q: Did you make a written statement?**

**A: I refuse to answer based on my Fifth Amendment constitutional rights.**

**Q: So if an officer provides your written sworn statement that would be a statement you made to the court, correct, or to the officer, correct?**

**A: I don't remember. My blood sugar level was extremely high. My vision was distorted. The tinnitus in my ears were ringing so loud I couldn't hear anything, so. I – I couldn't see.**

**Q: I'm gonna show you State's Exhibit A. Do you recognize this?**

**A: I know my Fifth Amendment rights.**

**Q: Is that your signature at the bottom of that –**

**A: I stand on my Fifth Amendment rights.**

**Q: -- statement?**

**THE COURT: You're refusing to answer, Mr. Arnold?**

**THE WITNESS: Yes, sir I am.**

**[PROSECUTOR]: I'm gonna have you read the statement for the record.**

**THE COURT: Mr. Arnold?**

**THE WITNESS:  Sir.**

**THE COURT:  Will you read the statement?**

**MR. MURRAY [Defense Counsel]:  Your Honor, I would object.**

**THE COURT:  Basis?**

**MR.  MURRAY:    That  the  witness  has  invoked  his  Fifth Amendment privilege.**

**THE COURT:  [Prosecutor]?**

**[PROSECUTOR]:    He  hasn't  given  a  basis  for  invoking  that privilege.**
**\* \* \***

**MR.  MURRAY:   In  that  he  would  be  reading  a  statement  in which he indicated that he was, couldn't remember being –**

**THE COURT:   He's refused to answer.   I don't see what the harm  would  be  in  having  him  read  the  statement.   Objection overruled.  Answer the – please read the statement, Mr. Arnold.**

**THE WITNESS:  "Jeff [Arnold] became threatening at dinner. \* \* \* I left the table and went into the computer room.  Jeff came into the computer room.  He grabbed me by the hair, then he choked me.   I have a ruptured disc in my neck[.] \* \* \* He continued to yell and would not let me out.  \* \* \***

**[Prosecutor]:  And who is that signed by?**

**A:  The name on it is – I can't read the witness, but Lester C. Arnold is the name at the bottom.**

**Q:  And you are Lester C. Arnold?**

**A:  I am one of Lester C. Arnold's, yes.**

**\* \* \***

> **Q:  And is that – Is that the statement you made to the officer on March 25th?**
>
> **A:  I've told you I'm seeking the protection of the Fifth Amendment.  I don't remember.  And –**
>
> **\* \* \***
>
> **Q:  Do you remember speaking with Officer Bethel?**
>
> **A:  Vaguely.**
>
> **Q:  And do you remember making a written statement for Officer Bethel?**
>
> **A:  I just – I just remember telling him that he asked me what I wanted done.  I told him I did not want my son arrested.  I did not want him charged.  All we needed was some space between us.**

(Tr. at 6-10).

{¶24} Contrary to all of the arguments raised by the dissent, the preceding portion of testimony makes clear that Lester never presented any basis for invoking his Fifth Amendment "privilege against self-incrimination."  To the contrary, it would appear his only reason for invoking the "privilege" was in order to not testify against his son, Arnold, as Lester did not want Arnold charged in the first place.  Nothing in the record establishes how Lester was remotely in danger of giving testimony that would incriminate himself.  Therefore, there was nothing improper, either in the State's questioning or the court's admonishment that Lester could be held in contempt for refusing to answer.

{¶25} Simply put, Arnold has no standing to raise any supposed violation of the Fifth Amendment rights of another State's witness and, in any event, Arnold is unable to establish that any comment by the State or the trial court, especially in a bench trial, created reversible error.

{¶26} Accordingly, for all of these reasons Arnold's first assignment of error is overruled.

*Second Assignment of Error*

{¶27} In Arnold's second assignment of error, Arnold contends that he did not receive a fair trial. Specifically, Arnold argues that the trial court "prejudicially presumed the Defendant-Appellant's guilt by its comments and conduct." (Appt's Br. at 12).

{¶28} In this case, Arnold cites two instances where he contends that the trial court's actions were improper and erroneous. The first was during the following portion of testimony, when Officer Brett Bethel was on the stand as a State's witness.

**Q [PROSECUTOR]: And what was the nature of that dispatch?**

**A [OFFICER BETHEL]: Possible domestic in progress.**

**Q: And what did you find upon your arrival?**

**A: Upon my arrival, uhm, a female was beginning – a female caller was speaking to her neighbors and she stated that her husband and her son –**

> **MR. MURRAY:  Objection, hearsay, Your Honor.**
>
> **THE COURT:  Ms. Dibble?**
>
> **MS. DIBBLE:  Present sense impression.**
>
> **THE COURT:  Mr. Murray?**
>
> **MR. MURRAY:  I would indicate that, uhm, it's still, it's not an excited utterance and it's still –**
>
> **THE COURT:  I'm sure we'll be getting to some excited utterances soon.**
>
> **MR. MURRAY:  Well –**
>
> **THE COURT:  Anything else, Ms. Dibble?**
>
> **MS. DIBBLE:  No.**
>
> **THE COURT:  Objection sustained.**

(Tr. at 14-15).

{¶29} Here, Arnold contends that the trial court's statement that there would probably be "some excited utterances soon" illustrated that the court was already prejudiced toward Arnold's guilt.  However, the court *sustained* Arnold's counsel's objection, precluding the testimony that the State intended to offer.  It is difficult for us to see how the court sustaining Arnold's counsel's objection establishes that the court had already presumed his guilt.

{¶30} Moreover, at this point in the trial, the court had already heard opening statements and the testimony of Lester Arnold.  The court was aware of

-14-

the altercation and thus was aware of the possibility of "excited utterances" being made. Therefore, the court's extrapolation was not unfounded. For these reasons this argument is not well-taken.

{¶31} Arnold next contends that the trial court "improperly assumed an adversarial, prosecutorial role during the defense's closing argument[.]" (Appt's Br. at 12-13). During defense counsel's closing argument, the following exchange occurred between defense counsel and the court.

> **DEFENSE COUNSEL: And he also indicated that with regard to, there was no sign of physical harm upon [Lester]. And no sign – and his wife testified that, uh, that she didn't see any sign of physical harm upon [Lester].**
>
> **And, therefore, we respectfully submit that the State – in fact, uhm, his father testified that he didn't, that Mr., that Jeffrey Arnold did not cause or attempt to cause physical harm.**
>
> **THE COURT: Did he say that? I think he said he didn't remember.**
>
> **DEFENSE COUNSEL: But he – with regard to not remembering, we respectfully submit, Your Honor, that is not the proof beyond a reasonable doubt. There's absolutely no forensic evidence, no photographs, no – no testimony of any one who claims to have seen any physical harm, any marks or cuts or abrasions of any physical harm –**
>
> **THE COURT: Is that a requirement under the statute, Mr. Murray?**
>
> **DEFENSE COUNSEL: I would respectfully submit that's indicative –**
>
> **THE COURT: Is it a requirement under the statute?**

**DEFENSE COUNSEL: It's not a requirement under the statute, but I respectfully submit that it's evidence indicative that the State has not shown beyond a reasonable doubt that there was any physical harm to –**

**THE COURT:  Which they're not required to do, right?**

**DEFENSE COUNSEL: They are required to prove proof beyond a reasonable doubt, Your Honor.**

**THE COURT:  But they're not required to show harm.**

**DEFENSE COUNSEL: I respectfully –**

**THE COURT:  Mr. Murray –**

**DEFENSE COUNSEL: The elements –**

**THE COURT:  -- are we gonna talk in riddles here or are you gonna be – I mean, I understand what you're arguing for, but there is no requirement of a showing of physical harm, correct?**

**DEFENSE COUNSEL: Cause or attempt to cause physical harm –**

**THE COURT:  Correct.**

**DEFENSE COUNSEL: -- is the requirement.  And I'm respectfully submitted –**

**THE COURT:  No gushing blood.  No broken bones.  No bruises.  No gunshot wounds, right?**

**DEFENSE COUNSEL: Your Honor, I respectfully submit that the State has not shown beyond a reasonable doubt that there was any attempt to cause harm or physical harm to Mr. Les Arnold.  * * ***

(Tr. at 46-48).

-16-

**{¶32}** Arnold contends that this portion of testimony establishes that the court assumed an adversarial role in the proceedings and thus was biased against Arnold.[1] However, it is clear that the court was attempting to clarify the legal language of the statute at issue. Arnold's counsel repeatedly argued that there was no physical harm, and the court repeatedly attempted to clarify that the statute did not require physical harm to establish guilt. While the court perhaps did not need to inquire of Arnold's counsel regarding this matter during closing arguments, we cannot find in a bench trial that such inquiries by the court were improper, or prejudicial, as there was ample proof that Arnold *attempted* to cause physical harm to his father, Lester Arnold. Accordingly, Lester's second assignment of error is overruled.

*Fourth Assignment of Error*

**{¶33}** In Arnold's fourth assignment of error, Arnold contends that the trial court erred by allowing Lester Arnold to read from his written statement to the police over defense counsel's objection. Specifically, Arnold contends that allowing Lester to read his prior statement violated the Confrontation Clause of the Sixth Amendment to the United States Constitution.

**{¶34}** "The Confrontation Clause to the United States Constitution provides that a defendant in a criminal prosecution has a right to confront the witnesses

---

[1] He does not cite any legal authority for his contention.

against him." *State v. Hudson*, 8th Dist. No. 89588, 2008-Ohio-1265, ¶ 40. The United States Supreme Court has held that the Confrontation Clause bars "testimonial statements of a witness who did not appear at trial unless [the witness] was unavailable to testify and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354 (2004). "'The key inquiry for Confrontation Clause purposes is whether a particular statement is testimonial or nontestimonial.'" *Hudson, supra,* quoting *State v. Crager,* 116 Ohio St.3d 369, 2007-Ohio-6840. "For Confrontation Clause purposes, a testimonial statement includes one made 'under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.'" *State v. Stahl,* 111 Ohio St.3d 186, 2006-Ohio-5482, quoting *Crawford,* at 52.

{¶35} Confrontation Clause violations are subject to harmless error analysis. *See State v. Kraft,* 1st Dist. No. C–060238, 2007–Ohio–2247, ¶ 67, citing *United States v. Summers,* 414 F.3d 1287, 1303 (10th Cir.2005). "A constitutional error can be held harmless if we determine that it was harmless beyond a reasonable doubt." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, ¶ 78 citing *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824 (1967).

{¶36} In this case, when Lester repeatedly attempted to invoke his "right against self-incrimination," refused to answer the State's questions, and denied

any memory of giving a statement to the police, the prosecutor had Lester read the statement that Lester gave to the police on the date of the incident. That statement was subsequently entered into evidence as an exhibit. On appeal, Arnold argues that the reading and introduction of the police report violated the Confrontation Clause.

{¶37} At the outset, we would note that it is unclear, how the inclusion of this evidence violates Arnold's Confrontation Clause rights when the witness, Lester Arnold, was present in open court to *be confronted* regarding his testimonial statement. "The Court in *Crawford* was explicit: 'when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.'" *State v. Knauff*, 4th Dist. Adams No. 10CA900, 2011-Ohio-2725, ¶ 43, quoting *Crawford*, *supra*, at 59, fn. 9, citing *California v. Green*, 399 U.S. 149, 158; (1970).

{¶38} Notwithstanding this fact, the information contained in the police report could properly have been used to impeach Lester, even though Lester was the State's own witness, as Lester repeatedly attempted to assert the privilege against self-incrimination and repeatedly stated he did not recall what happened. According to the dissent, this is apparently all any witness needs to say in order to avoid testifying—or to avoid even being cross-examined or impeached further by any prior inconsistent statement. However, such a rule would be, and always has

been, contrary to established case law. A statement that the witness "does not remember" is the equivalent of a denial to establish a foundation for cross examination and impeachment of a witness by the use of the prior statement in whatever form counsel chooses to use it. *State v. Pierce*, 2d Dist. Montgomery No. 24323, 2011-Ohio-4873, ¶ 82 quoting *State v. Harris* (Dec. 21, 1994), Montgomery App. No. 14343, 1994 WL 718227 ("If the witness says he cannot remember the prior statement, 'a lack of recollection is treated the same as a denial, and use of extrinsic impeachment evidence is then permitted.'"); *State v. Allen*, 5th Dist. No. 2012CA00196, 2013-Ohio-3715, ¶11. Whether or not it takes place in front of a jury is up to the trial court not the court of appeals.

{¶39} At the very least the State is initially entitled to pursue the prior statement with the witness - both to give the witness the fullest opportunity to respond to the alleged prior statement and to more clearly determine whether the witness intends to specifically deny the statement. *See State v. Hubbard*, 7th Dist. Jefferson No. 01JE4, 2002-Ohio-6904, ¶¶ 13-14. At this stage, the issue is one of laying the proper foundation for possible impeachment about what the witness has already stated to another person and not a Fifth Amendment privilege involving something the witness is being asked to reveal for the first time at trial.

{¶40} Even assuming a more elaborate protocol was required by the prosecution in handling the prior statement or establishing any "affirmative

damage" to the State's case any such error in this case was never specifically objected to by the defense and, in any event, "affirmative damage" was manifestly obvious where the witness was the sole complaining witness, the sole victim, and thereby the sole basis for the charge.[2]

{¶41} Therefore, this argument is not well-taken.

{¶42} Arnold makes additional arguments to assert that his rights were violated, stating that the trial court erred in allowing the police report to be admitted into evidence, and that his trial counsel was ineffective for failing to object to the admission of the police report. However, the trial court, which was the trier-of-fact, had already heard the evidence and thus the admission of the exhibit was merely cumulative and therefore harmless. Accordingly, Arnold's fourth assignment of error is overruled.

{¶43} For the foregoing reasons, Arnold's assignments of error are overruled and the judgment of the Fostoria Municipal Court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J., concurs in Judgment Only.**

**/jlr**

---

[2] Furthermore, we reject the contention of the dissent that *Dayton v. Combs,* 94 Ohio App.3d 291, 299 (2d Dist. 1993) stands for a universally accepted proposition that a witness' failure to recall can "never constitute affirmative damage." *See State v. Cupe*, 10th Dist. Franklin No. 98AP-64, 1999WL77219 (Feb. 18, 1999) (wherein the Tenth District Court of Appeals implied that such a holding was not universally accepted).

Case No. 13-13-27

**ROGERS, J.  Dissents.**

{¶44} I respectfully dissent from the opinion of the majority.

{¶45} As to Arnold's first assignment of error, I disagree with the majority that Lester did not have an adequate basis to assert his Fifth Amendment Privilege against self-incrimination.  I would observe that requiring a witness to explain, in open court and on the record, why he wishes to invoke his Fifth Amendment Rights is equivalent to requiring that witness to testify against himself, which is the very thing the Fifth Amendment prohibits.  "A valid assertion exists where a witness has reasonable cause to apprehend real danger of incrimination."  *State v. Landrum*, 53 Ohio St.3d 107, 120 (1990).  The claim of the witness is not enough.  *Id*.  The trial judge must determine from " 'the implications of the question in the setting in which it was asked' " whether the answer may criminally implicate the witness or provide a link in a chain of evidence that would do the same.  *Id.* at 120-21, quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951).  Once the privilege has been properly asserted, the continued questioning of the witness for the purpose of getting before the trier of fact inferences and innuendos that could not otherwise be elicited through direct testimony is prejudicial to the defendant. *State v. Dinsio*, 176 Ohio St. 460, 467 (1964).

{¶46} Here, when Lester refused to testify, the prosecutor told Lester he had no right to invoke the Fifth Amendment, but that was not the State's

-22-

prerogative. The trial court is tasked with the duty to determine whether the privilege has been properly invoked. The trial court then endorsed the State's conclusion without any discussion of the issue with the witness. Therefore, the trial court's threat of contempt under these circumstances was entirely improper.

{¶47} Moreover, under the circumstances, it cannot be said that the refusal to testify was improper. The majority speculates that the only reason Lester wanted to invoke the Fifth Amendment was to avoid testifying against his son. The reason could just as well have been that Lester was in fact the aggressor and wanted to avoid implicating himself. No one other than Lester and Jeffrey observed what happened, and Connie testified that Lester was easily agitated and "goes up like a rocket." Trial Tr., p. 31. Lester not only invoked his Fifth Amendment privilege on direct examination by the prosecutor, but continued to exert it upon cross examination by the defense, weakening the majority's assumption that he was attempting to avoid testifying against his son. As a result, Lester properly invoked his Fifth Amendment privilege, allowing him to refuse to testify.

{¶48} Once the privilege was properly invoked, it was improper for the trial court to allow the state to continue to ask Lester repeated questions about the events that transpired in the face of his repeated assertions of his Fifth Amendment privilege and refusals to testify. The State concedes that Lester invoked his Fifth

Amendment privilege, but argues that no prejudice to Appellant arose as a result of Lester's silence. Appellee's Br., p. 9. Instead, the State argues that, because the trial court disregarded Lester's testimony, it does not rise to the level of reversible error articulated in *Namet v. United States*, 373 U.S. 179, 83 S.Ct. 1151 (1963). Appellee's Br., p. 8. In essence, the State argues that Lester's silence was not used against Appellant by the trial court. *Id.* at 9.

{¶49} However, in the face of repeated questions, and after repeated Fifth Amendment assertions, Lester stated that he did remember telling a police officer that he did not want his son arrested. This, coupled with Lester's silence, provides the innuendo that he was silent so that his son will not be found guilty, an inference made by the majority. Further, it was through this silence that the State entered Exhibit A, his prior written statement, into evidence. As the State specifically used Lester's silence in conjunction with his statements that he did not want his son in jail to imply he was refusing to testify for an illegitimate purpose, and as a tactic to admit prior written statements into evidence instead of eliciting testimony, it prejudiced the defendant.

{¶50} As to Arnold's fourth assignment of error, the majority asserts that the confrontation clause was not implicated by admitting Lester's written statement, as Lester was on the stand for the purpose of cross examination. However, a witness who refuses to testify by invoking the Fifth Amendment

privilege against self-incrimination is considered unavailable. *State v. Sumlin*, 69 Ohio St.3d 105, 108 (1994). As Lester properly invoked his Fifth Amendment privilege against self-incrimination, he was not available for cross examination. As a result, Arnold's right of confrontation was implicated.

**{¶51}** As to requiring the witness to read his written statement, there is no support for that action in any rule or statute. While the majority[3] claims that the admission of the written statement was proper for impeachment purposes, the statement is inadmissible, even under a variety of evidentiary rules, such as, recollection refreshed, past recollection recorded, or excited utterance.

*Impeachment*

**{¶52}** The majority asserts that the statement could be offered to impeach the witness. However, for a party to be able to use a prior inconsistent statement to impeach its own witness, the party must prove surprise and affirmative damage. Evid.R. 607. Surprise is proved when a witness testifies in a manner inconsistent with prior written statements. *Dayton v. Combs*, 94 Ohio App.3d 291, 299 (2d Dist. 1993). " 'Affirmative damage' can be established only if the witness testifies to facts which contradict, deny, or harm the calling party's trial position. * * * 'Affirmative damage' is not shown where the witness denies knowledge of the

---

[3] The State also argues that the trial court disregarded Lester's written statement when making its decision, and therefore, Arnold was not prejudiced. However, the statement was admitted as an exhibit and, contrary to the State's assertion, the trial court only disregarded the statements Lester made in court. Trial Tr., p. 49. Nowhere in the record does the trial court state that it did not rely on the written statement of Lester when it found Arnold guilty.

facts contained in his prior statement or where he states that he does not remember the facts stated therein." (Citations omitted.) *Id.* Here, Lester did not contradict his statement. Instead, he invoked his privilege and stated he could not remember what occurred that night. As a result, even if the State could prove surprise, it could not prove affirmative damage. Thus, the written statement was not admissible to impeach the witness.

*Recollection Refreshed*

{¶53} Under Evidence Rule 612, a witness who does not remember the answer to a direct question may read his or her prior statement, before or during his or her testimony, to refresh his or her recollection. *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 57. While the witness is allowed to look at the prior statement, the testimony that is elicited after the recollection is refreshed is the evidence, not the prior statement itself. *Id.* " '[A] party may not read the statement aloud, *have the witness read the statement aloud*, or otherwise place it before the jury.' " (Emphasis added.) *Id.*, quoting *State v. Ballew*, 76 Ohio St.3d 244, 254 (1996). As the state had Lester read his statement aloud, it was inadmissible as a recollection refreshed.

*Past Recollection Recorded*

**{¶54}** However, if after reading the prior statement the witness still has no

current memory of the facts, the statement may be admissible as a past recollection

recorded. Evid.R. 803(5). A past recollection recorded is:

> [a] memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

*Id.*[4] To properly lay the foundation for a past recollection recorded, the Ohio

Supreme Court has noted:

> A memorandum made by a witness may be admitted in evidence in a criminal case as 'past recollection recorded' if the witness had first-hand knowledge of the subject matter of the memorandum, the memorandum was made at or near the time of the event and while the witness had a clear and accurate memory of it, the witness lacks a complete present recollection of the event, and the witness testifies on the stand that the written memorandum is accurate.

*State v. Scott*, 31 Ohio St.2d 1 (1972), paragraph 1 of the syllabus. When the

witness does not attest that the memorandum accurately reflects the knowledge of

the witness at the time the memorandum was made, it is inadmissible. *State v.*

*Perry*, 147 Ohio App.3d 164, 2002-Ohio-1171, ¶ 79 (6th Dist.). The

---

[4] Although such a statement may qualify for admission through a reading, there is no requirement that the witness be the one to read it, as the court required here. Indeed, witnesses can refuse to read their prior recorded statements, which is why the statement can otherwise be submitted into evidence by an adverse party. *See State v. Clay*, 187 Ohio App.3d 633, 2010-Ohio-2720, ¶ 38 (5th Dist.). However, there is no foul if the witness is willing. *State v. Henson*, 1st Dist. Hamilton No. C-060320, 2007-Ohio-725, ¶ 15.

memorandum will also be inadmissible when the witness cannot remember making the statement or when the statement does not accurately reflect the events as the witness remembered them. *Combs*, 94 Ohio App.3d at 301.

{¶55} Here, Lester repeatedly refused to answer any questions about his statement, asserting his Fifth Amendment privilege. When asked by the prosecution whether he remembered making a statement to the officers, he responded: "I just remember telling him that he asked me what I wanted done. I told him I did not want my son arrested. I did not want him charged. All we needed was some space between us." Trial Tr., p. 10. Lester never attested to the accuracy of the statement at the time it was recorded. In fact, on cross examination, when asked whether it was a true and accurate representation of the events of that night, Lester stated that he did not know and did not remember. *Id*. at p. 11-12. Thus, Lester's statement, under the circumstances of this case, is inadmissible as a past recollection recorded, as the state did not lay the necessary foundation for its admission.

{¶56} Further, in order to offer a memorandum as a past recollection recorded, it is necessary that the witness be available for full and complete cross-examination. "The admission of a memorandum as 'past recollection recorded' in a criminal case does not deprive the defendant of his right of confrontation and cross-examination, where the witness is present on the stand and is available for

full cross-examination by the defendant." *Scott*, 31 Ohio St.2d at paragraph 2 of the syllabus. Here, Lester invoked his Fifth Amendment privilege, and as a result was unavailable.

*Excited Utterance*

**{¶57}** The State also appears to argue that the statement was an excited utterance. Not true! Evidence Rule 803(2) defines an excited utterance as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Where no evidence is presented as to the demeanor of the declarant when written testimony is prepared, it cannot be admissible as an excited utterance. *State v. Nixon*, 12th Dist. Warren No. CA2011-11-116, 2012-Ohio-1292, ¶ 15. Even where the victim is still visibly upset, the ability to gather coherent thoughts into a written statement that includes additional information, such as the events leading up to a crime, defeats the excited utterance exception. *State v. Scari*, 11th Dist. Portage No. 2002-P-0091, 2003-Ohio-3493, ¶ 63. Therefore, while Lester's first statements to police upon exciting his garage might be classified as excited utterances his written statement is certainly not.

**{¶58}** As there are no evidentiary rules that would otherwise allow the prior written statement to be admitted, the defendant's right to confront his witnesses under the Sixth Amendment was violated, as Lester's statements were clearly

testimonial in nature. *See Crawford v. Washington*, 541 U.S. 36, 51-52 (2004). It is obvious that the police officer asked for Lester's written statement to assist in a future prosecution, not to assist in securing the scene.

{¶59} The State argues that the error is harmless. Appellee's Br., p. 13-14. The Ohio Supreme Court has found that the impermissible admission of evidence over the constitutional rights of the defendant is harmless if the "remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus. However, a review of the record, without any of Lester's testimony and without his written statement, does not provide "overwhelming" evidence of guilt. It is undisputed that some sort of encounter happened between Arnold and Lester, but we have no indication as to who was the actual aggressor. We have an excited utterance by Lester that Arnold punched Lester in the head and attempted to choke him. Trial Tr., p. 17. However, the officer testified that Lester had no visible injuries at the time of incident. No witness actually witnessed the event in question, and no evidence was offered that Arnold was the aggressor. This is hardly "overwhelming" evidence of guilt.

{¶60} The overall tenor of this trial demands that the conviction be reversed and the matter remanded for a new trial.

/jlr