*160 O’Donnell, J.,
dissenting.
{¶ 77} Respectfully, I dissent.
{¶ 78} The trial court disregarded its duty to appraise the propriety of Lester Arnold’s assertion of his Fifth Amendment privilege against self-incrimination, errantly compelled Lester to read aloud a statement he made concerning.his son, Jeffrey Arnold, the defendant, and then admitted the statement into evidence, thereby affecting Jeffrey’s rights.
{¶ 79} The Fifth Amendment privilege against self-incrimination is confined “to instances where the witness has reasonable cause to apprehend danger from a direct answer.” Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Once a witness asserts the privilege, “[i]t is for the court to say whether his silence is justified, * * * and to require him to answer if ‘it dearly appears to the court that he is mistaken.’” (Emphasis added.) Id., quoting Temple v. Commonwealth, 75 Va. 892, 899 (1881). “The trial judge in appraising the claim ‘must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.’ ” Id. at 487, quoting Ex parte Irvine, 74 F. 954, 960 (C.C.S.D.Ohio 1896).
{¶ 80} The lead opinion states that “[t]he record before us does not reflect an ideal inquiry by the trial court” into the basis of Lester’s claim of privilege. Lead opinion at ¶ 48.
{¶ 81} The record reflects no inquiry by the trial court on this subject. Lester was the first witness called to testify, and when he initially asserted the privilege against self-incrimination, the trial court knew that Jeffrey was accused of committing domestic violence against him, and the facts in evidence showed that Jeffrey was Lester’s son, that he lived with his parents, and that police had been dispatched to the family home sometime in the spring of 2013.
{¶ 82} The trial court could not have discerned from that information that Lester was clearly mistaken about his right to assert the privilege or whether Jeffrey or Lester had been the aggressor. Nonetheless, instead of inquiring into the basis of the claim, the court immediately advised Lester that he could be held in contempt for failing to answer questions and allowed the state to continue questioning him. Lester then refused to answer questions about a written statement he had given to police while sitting in the front seat of a police vehicle and stated that he did not remember giving such a statement, and the court used the refusal as a reason to compel him to read the statement aloud and admitted it into evidence. After reading the statement, Lester never testified that he remembered giving it and only recalled telling an officer that he did not want his son arrested or charged and that he and his son just needed some space between them.
*161 {¶ 83} The lead opinion concludes that the admission of the statement did not violate Jeffrey’s Sixth Amendment right to confront witnesses and also concludes that “there is no showing that the use of [Lester’s] prior statement was improper.” Lead opinion, ¶ 16, fn. 2 (relying on Evid.R. 613(B), which permits use of extrinsic evidence of a prior inconsistent statement under certain circumstances if the statement “is offered solely for the purpose of impeaching the witness,” [emphasis added] and further relying on an opinion of the Second District Court of Appeals interpreting that rule).
{¶ 84} Although Jeffrey challenges the statement on Sixth Amendment grounds, it is “well settled that this court will not reach constitutional issues unless absolutely necessary,” State v. Talty, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 9, and in this case, that is not necessary.
{¶ 85} The state did not request that Lester read his statement or that the trial court admit it into evidence solely to impeach him. Rather, here, the state offered his out of court statement to prove the truth of the matter asserted therein — that Jeffrey attempted to cause physical harm to Lester. The statement is hearsay as defined by Evid.R. 801(C), and no hearsay exception applies in this instance.
{¶ 86} The trial court’s decision to compel Lester to read his statement and admit it into evidence violated the Ohio Rules of Evidence and constituted plain error affecting Jeffrey’s substantial rights. See Crim.R. 52(B). As the dissenting judge in the court of appeals observed, without the testimony and the statement of Lester,
[i]t is undisputed that some sort of encounter happened between [Jeffrey] Arnold and Lester, but we have no indication as to who was the actual aggressor. We have an excited utterance by Lester that Arnold punched Lester in the head and attempted to choke him. * * * However, the officer testified that Lester had no visible injuries at the time of incident. No witness actually witnessed the event in question, and no evidence was offered that Arnold was the aggressor.
2014-Ohio-1134, 2014 WL 1339806, ¶ 59 (Rogers, J., dissenting).
{¶ 87} This evidence is insufficient to support Jeffrey’s conviction for domestic violence beyond a reasonable doubt. Based on these facts, I would reverse the judgment of the court of appeals.