O’Neill, J.,
dissenting.
{¶ 91} Respectfully, I must dissent.
{¶ 92} I agree that with regard to Lester’s Fifth Amendment claims, the “record before us does not reflect an ideal inquiry by the trial court.” Lead opinion at ¶ 48. However, this matter presents a good opportunity to explain the duty of a trial court to take affirmative steps to determine the validity of the Fifth Amendment claims of any witness. Hoffman v. United States, 341 U.S. 479, 486-487, 71 S.Ct. 814, 95 L.Ed. 1118 (1951); United States v. Melchor Moreno, 536 F.2d 1042, 1046 (5th Cir.1976). If the trial court had simply taken Lester aside and had a frank in camera discussion, allowing him to “allude in very general, circumstantial terms to the reasons why he feels he might be incriminated,” the bench trial might have proceeded smoothly. Melchor Moreno at 1046. Instead, I believe that the trial court erroneously left Lester to prove that he was entitled to the Fifth Amendment privilege “in the sense in which a claim is usually required to be established in court” and that as a result Lester was “compelled to surrender the very protection which the privilege is designed to guarantee.” Hoffman at 486.
{¶ 93} I disagree with the lead opinion that the Fifth Amendment claims of a state’s witness are wholly irrelevant to a criminal defendant. This is not a case *163 where a party is claiming the privilege against self-incrimination on behalf of a witness who could not or had not claimed it. E.g., Bellis v. United States, 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974) (law-firm partner called as grand-jury witness cannot claim his own privilege as basis for refusing to produce records of law firm); Couch v. United States, 409 U.S. 322, 329, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973) (taxpayer may not claim privilege to prevent her accountant from producing taxpayer’s records in accountant’s possession). Rather, in this case it is clear from the record that Lester, the witness, unequivocally claimed his own privilege.
{¶ 94} The bottom line is that Lester’s statement to the police was an out-of-court statement offered for the truth of the matter asserted. That makes the statement hearsay, and absent an exception, it is inadmissible. The trial court’s order to read the statement unfairly prejudiced Arnold because it allowed the state to override Lester’s claim of privilege and compel him to read an otherwise inadmissible statement into the record. We have considered a similar problem in the past. See State v. Dinsio, 176 Ohio St. 460, 200 N.E.2d 467 (1964). In Dinsio, a witness for the state refused to answer questions, invoking his privilege against self-incrimination. The prosecutor then proceeded to question the witness about a prior written statement regarding criminal acts of the defendant as if on cross-examination. The state asked the witness about each line of the statement, and the witness invoked the privilege against self-incrimination in response to each question. We held that this was error prejudicial to the defendant because the questions themselves allowed the jury to draw inferences regarding facts that the state was prohibited from eliciting from the witness by direct questioning. Id. at 467-468. We did not east this as a constitutional error then, id. at 467, and we do not need to do so now. Both cases are properly resolved under the standards regarding erroneous admission of evidence.
{¶ 95} Arnold was prejudiced by a mechanism similar to the one in Dinsio. After a long series of questions, it became clear to the state that Lester would not be a helpful witness on account of his belief that he was privileged to refuse to answer under the Fifth Amendment. At the state’s request, the trial court used Lester’s claim of the privilege against self-incrimination to justify compelling him with threats of contempt to read into evidence from an unsworn[7] writing he claimed he did not remember making. I know of no rule of evidence or procedure allowing a court to compel a witness to read an unsworn written *164 statement into the record when the witness has professed a lack of personal knowledge regarding the content of that writing. See State v. Arnold, 3d Dist. Seneca No. 13-13-27, 2014-Ohio-1134, 2014 WL 1339806, ¶ 51-58 (Rogers, J., dissenting). Inexplicably, the plurality of Justices joining the lead opinion believe that ordering Lester to read this statement did not require him to adopt or endorse its content. Although the plurality, like the trial court, does not see the harm in compelling Lester to read this statement into evidence, I consider the order compelling Lester to do so, and the later order admitting the statement into evidence, to be an abuse of discretion.
{¶ 96} I further disagree with the plurality that this matter is one in which the presumption that a judge in a bench trial considered only proper evidence in reaching a verdict renders the error harmless. This case actually stands for the opposite principle. Absent the wrongfully admitted statement, there is no credible evidence of guilt. I believe that relying on a judge-made presumption of propriety without having the benefit of overwhelming evidence of guilt falls short of our duty to determine whether the error here was harmless “beyond a reasonable doubt.” State v. Morris, 141 Ohio St.3d 399, 2014-Ohio-5052, 24 N.E.3d 1153, at ¶ 29. Error in the admission of testimony is harmless only when there is no reasonable possibility that the testimony contributed to the accused’s conviction. Id. at ¶ 28; State v. Lytle, 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), paragraph three of the syllabus, vacated in part on other grounds, 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154 (1978); Crim.R. 52(A). That is certainly not the case here.
{¶ 97} What “ ‘relevant, material, and competent evidence’ ” of domestic violence did the trial court below solely rely on? State v. Post, 32 Ohio St.3d 380, 384, 513 N.E.2d 754 (1987), quoting State v. White, 15 Ohio St.2d 146, 151, 239 N.E.2d 65 (1968). A “crashing sound,” a “struggling sound,” some disheveled hair, and a dubiously admissible out-of-court statement that Arnold punched Lester in the head and grabbed him in a chokehold, which was made some time after the “commotion.” The lead opinion claims that the statement was merely cumulative, but I believe that it bolstered the otherwise limited evidence listed above. It is impossible therefore to “excise the improper evidence” and say that the remaining evidence alone overwhelmingly supports a verdict of guilt. Morris at ¶ 29. Thus, I cannot agree that there is no reasonable possibility that the testimony contributed to the accused’s conviction.
{¶ 98} Respectfully, I dissent.
*165 Timothy J. Hoover, Fostoria Law Director, for appellee.
Gene P. Murray, for appellant.
Russell S. Bensing, urging reversal for amicus curiae, Ohio Association of Criminal Defense Lawyers.

. In his testimony, Officer Ely claimed to have administered an oath swearing Lester to the truth of the written statement, but the statement itself does not indicate that Ely administered an oath, and the officer’s signature is on a line marked “witness.” Further, there is no testimony in the record *164 showing that Officer Ely has complied with R.C. 2935.081, which provides the authority for peace officers to administer oaths in particular circumstances.